UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JIVONNIE JONES,

    Plaintiff,                        CASE NO. 08-CV-15258

v.                                  DISTRICT JUDGE BERNARD A. FRIEDMAN
                                   MAGISTRATE JUDGE CHARLES E. BINDER

C. JOHNSON, Resident Unit Officer,
and DYE, Resident Unit Officer,

    Defendants.
                                     /

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
(Doc. 14)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion for summary judgment be **GRANTED** and the case be dismissed with prejudice.

## II.    REPORT

### A.    Introduction

On December 23, 2008, Plaintiff, a state prisoner then housed at the Macomb Correctional Facility in Michigan,[1] filed this *pro se* federal civil rights complaint under 42 U.S.C. § 1983 alleging that, in July 2008, Plaintiff was maliciously assaulted by Defendants for the purpose of causing him harm in violation of the Eighth Amendment of the United States Constitution. (Compl., Doc. 1 at 5-6.) On January 6, 2009, this case was referred to the undersigned Magistrate Judge for pretrial case management. (Doc. 5.) Defendants filed the instant motion for summary

---

[1] Plaintiff is currently incarcerated at the Ionia Maximum Correctional Facility in Ionia, Michigan.

judgment on March 12, 2009 (Doc. 14), and Plaintiff responded. (Doc. 21, 22.) Upon review of the documents, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation without oral argument.

**B.    Parties' Factual Assertions and Arguments**

Plaintiff's complaint avers the following incident occurring on July 17, 2008, involving both Defendants:

> Plaintiff, serving a four to four year [sic] sentence at the Macomb Correctional Facility, (MCF) was housed in the segregation unit. On July 17, 2008, after prisoner meals had been served, Plaintiff was holding his food slot hostage. (Placing an arm out of the food slot so as to preclude it being closed) Plaintiff was attempting to gain the attention of administration so he could make them aware of staff whom were abusing their authority. Corrections Officer Dye then grabbed Plaintiff's arm and began violently twisting it. He was digging his finger nails into Plaintiff's arm. At which point, Corrections Officer Johnson began slamming the heavy metal food slot door on Plaintiff's arm. Plaintiff was secure in his segregation cell at all times during this assault, and all others in the segregation unit were locked securely in their cells. The assault continued for several minutes, and was done maliciously for the very purpose of causing harm.

(Doc. 1 at 6.)

In her affidavit, Defendant Johnson states that when she encountered Plaintiff, he had just returned to his cell after having been found guilty of a major misconduct and that he was yelling obscenities and throwing paper out of his food slot. (Johnson Aff., Doc. 14, Ex. A ¶¶ 4-5.) Defendant Johnson further indicates that the food slots in the segregation unit were all open because the heat index that day was above 85 degrees Fahrenheit, but that she admonished Plaintiff that if he continued yelling and throwing paper out of his food slot, it would be closed. (*Id.* ¶ 6.) After Plaintiff took his food slot "hostage," Defendant Johnson had no physical contact with Plaintiff but did observe Defendant Dye speaking with Plaintiff and attempting to close the food slot. (*Id.* ¶¶ 8-9.) Defendant Johnson then "saw inmate Jones strike Officer Dye around the groin

area." (*Id.* ¶ 9.) Defendant Johnson next witnessed Defendant Dye "secure[] [Plaintiff's] arm to prevent [Plaintiff] from striking him again." (*Id.* ¶ 10.) Defendant Johnson's description of this day's event is consistent with the "Critical Incident Participant Report" filed that day. (Doc. 14, Ex. A at 5.)

Defendant Dye states in his affidavit that he heard Plaintiff threaten to strike Defendant Johnson, he talked to Plaintiff and gave him a "direct order to remove his arm from the food slot," and that while Defendant Dye was "attempting to close the food slot, [Plaintiff] stuck [sic][2] my upper right leg near the groin area with a closed fist [and] then attempted to grab my duty belt." (Dye Aff., Doc. 14, Ex. B ¶¶ 4-5.) Defendant Dye then "secured" Plaintiff's arm "so he could not strike [him] again," using his "left hand, thumb, index and middle finger to hold his elbow [] and using [his] right thumb, index and middle finger to secure his wrist and hand." (*Id.* ¶ 4.)[3] Defendant Dye indicates that he "received no serious injury and released [Plaintiff's] arm when [he] felt safe to do so [and that he] used the minimal amount [of] force necessary to secure [Plaintiff's] arm." (*Id.* ¶ 5.) Defendant Dye indicates he did not strike Plaintiff. (*Id.*) Defendant Dye's account is consistent with the "Critical Incident Participant Report" filed that day. (Doc. 14, Ex. B at 4.)

Shift Commander Anne Green's Critical Incident Participant Report indicates that after she spoke with Plaintiff, Plaintiff removed his arm from the food slot and she closed the slot. (Doc. 14, Ex. E at 2.)

After the incident occurred, Plaintiff complained that his right arm was hurting so he was taken to Registered Nurse Lisa Pfluke, whose Critical Incident Participant Report on that day

---

[2] I assume the affiant meant to say "struck."

[3] The paragraphs in Defendant Dye's affidavit are numbered "4, 5, 4, 5, 6."

3

indicated that she found no swelling or redness in the area and found that Plaintiff's range of motion was good. (Doc. 14, Ex. J at 2.) Plaintiff continued to complain about arm pain at various times through March 2009, but no objective medical findings supported his complaints. (Doc. 15, records filed under seal at 4, 75, 81, 82, 106.)

Plaintiff's complaint also avers a second incident occurring on July 26, 2008, involving Defendant Johnson only:

> On July 26, 2008, Plaintiff was again assaulted by Defendant Johnson. During meal time Plaintiff was waiting by his food slot when Defendant Johnson attempted to serve him his nutra loaf. (A concoction in which all of the meals food is mixed together given to prisoners on food restriction) Defendant Johnson stated "here is your dog food loaf." Plaintiff stated that he did not want it. Defendant Johnson stated that Plaintiff was "going to eat this, you are trying to act bad like you are the shit. You're a cell gangsta." She then reached in with the nutra loaf and slapped Plaintiff in the mouth with it. Plaintiff then attempted to hold the food slot hostage in order to make Defendant's superiors aware of her abhorrent behavior. At which point, Defendant Johnson violently closed the metal food slot on Plaintiff's arm causing severe bruising.

(Doc. 1 at 6-7.)

Defendant Johnson recalls that, after attempting to give Plaintiff his food loaf, Plaintiff stated, "You can keep that shit, give me my regular tray." (Johnson Aff., Doc. 14, Ex. A ¶¶ 11-12.) Defendant Johnson then "went to close the food slot, and [Plaintiff] put his arm on the food slot" so Defendant Johnson "continued passing out trays and ignored the threats and insults [Plaintiff] was yelling from his cell." (*Id.* ¶¶ 13-14.) Thus, Defendant Johnson contends that she had no physical contact with Plaintiff on this occasion either. (*Id.* ¶ 14.) Plaintiff apparently did not seek or receive medical attention on that day.

**C.     Motion Standards**

A motion for summary judgment will be granted under Rule 56(c) of the Federal Rules of Civil Procedure where "there is no genuine issue as to any material fact and . . . the moving party

4

is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  All facts and inferences must be viewed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence.  *Matsushita*, 475 U.S. at 587-88.  Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof.  *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts."  *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993).  When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist.  *Street*, 886 F.2d at 1479-80.  Instead, the court will rely upon the "facts presented and designated by the moving party."  *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).  The Sixth Circuit has explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party:  seeking out facts, developing legal theories, and finding ways to defeat the motion."  *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The elements of a claim under 42 U.S.C. § 1983 are: (1) the violation of a right secured by the federal Constitution or federal law that was (2) committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).

**D.    Analysis and Conclusions**

**1.    Qualified Immunity**

Defendants contend that they are entitled to qualified immunity. (Doc. 14 at 5.) The Supreme Court has explained that, pursuant to the defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The rationale underlying the doctrine is that "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* Qualified immunity further recognizes that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation he confronts. 'If the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense.'" *Greene*

6

*v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

The defense of qualified immunity "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When raised after discovery, "the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

The Supreme Court has clarified the interplay between qualified immunity and summary judgment:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts. As we have emphasized, '[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."' '[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.' When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. . . . Respondent's version of the events is so utterly discredited by the record that no reasonable jury could have believed him [so] [t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

According to this recent Supreme Court precedent, courts must weave the summary judgment standard into each step of the qualified immunity analysis and must not proceed to step

7

two unless a genuine issue of fact exists under step one. The Sixth Circuit has delineated the following steps to the qualified immunity analysis:

> The first inquiry is whether the [p]laintiff has shown a violation of a constitutionally protected right; the second inquiry is whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated the right; and the third inquiry is 'whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of clearly established rights.'

*Tucker v. City of Richmond, Ky,* 388 F.3d 216, 219 (6th Cir. 2005) (quoting *Higgason v. Stephens*, 288 F.3d 868, 878 (6th Cir. 2002)). Once the defense of qualified immunity is raised, the burden rests with the plaintiff to show that the defendant is not entitled to qualified immunity. *Curry v. School Dist. of the City of Saginaw*, 452 F. Supp. 2d 723, 734 (E.D. Mich. 2006) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). The court must only consider the facts known to the officers at the time the conduct was undertaken. *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005).

    **a.**    **Constitutional Violation - Eighth Amendment**

It is beyond dispute that, as a general proposition, an inmate's rights under the Eighth Amendment are violated when government entities or officials are deliberately indifferent to his medical needs or his safety. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

> A prison official violates the Eighth Amendment only when . . . [f]irst, the deprivation alleged must be, objectively, sufficiently serious [and] [s]econd, when the offending conduct itself is not a criminal penalty. It is the unnecessary and wanton infliction of pain that implicates the Eighth Amendment . . . [t]hus, a prison official will be liable under the Eighth Amendment for failing to protect an inmate only if the official acted with deliberate indifference.

8

*Davis v. Brian*, No. 98-1810, 1999 WL 503522, *3 (6th Cir. July 9, 1999) (unpublished) (internal citations and quotations omitted). "Obduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference." *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992).

In the context of prison discipline, Plaintiff must prove an unnecessary and wanton infliction of pain or the infliction of pain without penological justification. *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). Under the objective inquiry in this context, the question is whether "contemporary standards of decency" have been violated. *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Id.* Thus, a prisoner need not prove a significant injury. *Moore v, Holbrook*, 2 F.3d 697, 701 (6th Cir. 1993). Under the subjective component, the inquiry involves "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986). Toward that end, "officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force." *Hudson*, 503 U.S. at 6.

Courts are to keep in mind that "corrections officials must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" *Id.* (quoting *Whitley,* 470 U.S. at 320.) The factors to be analyzed when considering the conduct of prison officials are: 1) the need for the application of force, 2) the relationship between the need for force and the amount used, 3) the threat reasonably perceived by the responsible officials, 4) any efforts made to temper the severity of the forceful response, and 5) the extent of the injury inflicted. *Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321. This analysis must be made in harmony with the Supreme Court's

admonition that courts should defer to prison officials as they attempt to maintain order and discipline within dangerous institutional settings. *Whitley*, 475 U.S. at 321-22. Physical restraints are constitutionally permissible where there is a penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 677750, *1 (6th Cir. Feb. 15, 1996). In addition, it should be noted that maximum-security prisoners are "'not usually the most gentle or tractable of men and women.'" *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

As to the July 17, 2008 incident, all parties concur that Plaintiff was holding his food slot "hostage," which violates prison policy. (Doc. 1 at 6; Doc. 14, Ex. A at 3; Doc. 14, Ex. B at 2.) It is uncontradicted on this record that Defendant Johnson had no physical contact with Plaintiff. (Doc. 14, Ex. A at 3.) It is also uncontradicted that Plaintiff's food slot was not closed until Shift Commander Green closed it after the "incident" with Defendant Dye. (Doc. 14, Ex. E at 2.) Thus, the only contested issue is whether Defendant Dye "violently twisted" and dug his nails into Plaintiff's arm (Doc. 1 at 6) or whether Defendant Dye "secured" Plaintiff's arm to prevent Plaintiff from striking him. (Doc. 14, Ex. B at 2-3; Doc. 14 at Ex. E.) All of the prison documentation from that day supports Defendant Dye's version of the events, indicating that Plaintiff suffered no visible injury, redness, or swelling.

I suggest that there is no genuine issue of material fact that the force used to accomplish the penological purpose was not unconstitutionally disproportionate, and that any injury suffered by Plaintiff was *de minimus* and not of constitutional magnitude. *See Scott v. Harris,* 127 S. Ct. at 1776 (where a party's version of the events is so utterly discredited by the record that no reasonable jury could have believed him," the court should "not have relied on such visible fiction"); *Jones Bey v. Johnson*, 248 Fed. App'x 675, 677 (6th Cir. 2007) (prison officers entitled

10

to qualified immunity because injuries to wrist suffered when handcuffed hands were "mashed" against the food slot of his cell were *de minimus* and thus did not state a constitutional violation).

As to the July 26, 2008, incident, according to Defendant Johnson, the food slot was never closed on Plaintiff's arm or otherwise (Doc. 14, Ex. A at 3), while Plaintiff maintains that the food loaf "slapped" his mouth and that the food slot was closed on his arm, causing "severe bruising." (Doc. 1 at 6-7.)  Plaintiff did not seek medical attention for either of these alleged injuries. I suggest that the record evidence "utterly discredits" Plaintiff's version of the events, *Scott, supra,* and further suggest that even if Plaintiff's version were credited, his alleged injuries are *de minimus* and do not state a constitutional violation. *Jones Bey, supra.* To the extent that Plaintiff alleges Defendant Johnson's language supports an Eighth Amendment claim, use of derogatory language does not offend the Eighth Amendment. *See Jones Bey*, 248 Fed. App'x at 677 (citing *Corsetti v. Tessmer,* 41 Fed. App'x 753, 755-56 (6th Cir. 2002).

Therefore, I suggest that both Defendants are entitled to summary judgment as to both alleged incidents because the evidence "is so one-sided that one party must prevail as a matter of law." *Booker,* 879 F.2d at 1310.

### b. Clearly Established Right

Even if Plaintiff could show a violation of the Eighth Amendment, I suggest that the right was not clearly established in light of the above-cited case law supporting the legality of their actions.

### 2. Sovereign Immunity

Defendants further argue that the official capacity suits against them are barred by sovereign immunity. (Doc. 14 at 15-16.) A suit against a state official in his or her official capacity brought under 42 U.S.C. § 1983 is barred by the Eleventh Amendment because such an action is, in fact, a suit against the state. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). "As Congress did not abrogate the Eleventh Amendment when enacting § 1983, neither a state, nor a state official sued in his official capacity is a 'person' who is subject to suit under § 1983." *Massingill v. Ohio Adult Parole Authority*, 28 Fed. App'x 510, 511 (6th Cir. 2002) (holding that motion to amend complaint to add state officials in their official capacities as defendants was properly denied because it would not have withstood a Rule 12(b)(6) motion to dismiss). Accordingly, I suggest that Defendants' motion for summary judgment be granted as to Plaintiff's official capacity claims because they are barred by the Eleventh Amendment.

### 3. Conclusion

For all the reasons stated above, I recommend that Defendants' motion for summary judgment be granted and the case dismissed with prejudice.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are

advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

|  |  |
|---|---|
| Dated: May 4, 2009 | s/ *Charles E Binder*<br>CHARLES E. BINDER<br>United States Magistrate Judge |

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served upon counsel of record via the Court's ECF system, and was mailed by the U.S. Postal Service to the following non-ECF participant: Jivonnie Jones # 631727, Ionia Maximum Correctional Facility, 1576 W. Bluewater Highway, Ionia, MI 48846.

Date: May 4, 2009                                        By        s/Patricia T. Morris
                                                                        Law Clerk to Magistrate Judge Binder

13